## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

RICKIE LYNN TIGUE, JR.                                                                PLAINTIFF
ADC #171131

v.                                         2:23-cv-00172-BSM-JJV

MOSES JACKSON,
Warden, EARU, ADC, *et al.*                                                          DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United

States District Judge Brian S. Miller.   Any party may serve and file written objections to this

Recommendation.   Objections should be specific and include the factual or legal basis for the

objection.   If the objection is to a factual finding, specifically identify that finding and the

evidence that supports your objection.   Your objections must be received in the office of the

United States District Court Clerk no later than fourteen (14) days from the date of this

Recommendation.   Failure to file timely objections may result in a waiver of the right to appeal

questions of fact.

## I.      DISCUSSION

Rickie Lynn Tigue, Jr. is a prisoner in the East Arkansas Regional Unit ("EARU") of the

Arkansas Division of Correction ("ADC").    He has filed this *pro se* action alleging that on July

24, 2023, Defendants Mailroom Supervisor Linda Southern and Warden Moses Jackson violated

his rights under the First Amendment and the Religious Land Use and Institutionalized Persons

Act ("RLUIPA") when they rejected a six-page document mailed to him by Word of Life Christian

Fellowship, Inc.[1] (Docs. 17, 21.) Whether that religious document was "correspondence" or a

---

[1] All other claims and defendants have been previously dismissed without prejudice.   (Doc. 24.)

1

"publication" under ADC policy is a source of considerable confusion in this case.

Defendants have filed a Motion and Supplemental Motion for Summary Judgment arguing Plaintiff's claims should be dismissed without prejudice because he failed to properly exhaust his administrative remedies. [2]    (Docs. 46-48, 69-71.)    Plaintiff has filed a Response and Supplemental Response.    (Docs. 66-68, 72.)    After careful consideration and for the following reasons, I recommend Defendants' Motions be granted, Plaintiff's claims against Defendants Jackson and Southern be dismissed without prejudice, and this case be closed.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.    *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).    The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.    *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial.    *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011).    In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party."    *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

---

[2] On March 1, 2024, I gave the parties the opportunity to file supplemental pleadings clarifying the proper ADC procedure for Plaintiff to challenge the rejection of the specific document he received in this case.    (Doc. 60.)

III.    ANALYSIS

A.    The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."    42 U.S.C. § 1997e(a).    The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court.    *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).    Importantly "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."    *Jones,* 549 U.S. at 218.    Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.    *Id.*

However, the PLRA only requires prisoners to exhaust "available" administrative remedies.    42 U.S.C. § 1997e(a).    Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."    *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

3

B.    **Correspondence Policies AD 21-01 and EARU 16.01.0**

The relevant correspondence policies are ADC Administrative Directive 2021-01 ("AD 21-01") and EARU 16.01.0.   (Doc. 46-6.)   AD 21-01 says it is the ADC's policy to "permit inmates to correspond with family, friends, officials, and other significant community contacts with a minimum of interference consistent with the legitimate security needs of the facility; however, the increasing use of illegal drugs has led to the need to limit incoming paper correspondence."[3]   (Doc. 46-7 at § I.)   Thus, all incoming, non-privileged correspondence is limited to three pages, which along with the front of the envelope, is copied and given to the prisoner while the originals are destroyed.   (*Id*. at § III(B) and IV(D)(1).)   If the incoming correspondence is more than three pages, the Unit Mailroom Supervisor sends the inmate a Return Mail Notice stating why the correspondence was rejected and giving the inmate thirty days to either: (1) pay to have it returned to the sender; or (2) allow it to be destroyed.   (*Id*. at § IV(A)(1), (5)) (Doc. 46-6.)   If the return postage is not paid or the inmate selects the second option, the Mailroom Supervisor sends the rejected correspondence to the "Deputy Warden/Center Supervisor for review and/or approval to destroy."   (*Id*. at § IV(A)(6)) (Doc. 46-6.)

Although organized differently, EARU 16.01.0 tracks the relevant portions of AD 21-01 as summarized above.   (Doc. 46-6, 46-8.)   But neither policy defines "correspondence" or says how inmates must grieve what they believe to be wrongfully rejected correspondence.

C.    **Grievance Policy AD 19-34**

The ADC's general grievance policy is found in Administrative Directive 19-34 ("AD 19-

---

[3] The ADC had reason to believe drugs were being smuggled into prisons through "mail soaked in liquefied drugs or having the drugs placed under stamps." https://arktimes.com/arkansas-blog/2017/07/28/department-of-correction-restricts-inmate-mail-to-three-pages-no-large-cards.

34"), which establishes a three-step procedure.[4]    (Doc. 46-3.)    First, the inmate must attempt informal resolution by submitting a form to a designated problem solver within fifteen days of the incident.    Second, the prisoner must appeal to the Warden.    And third, the prisoner must appeal to the ADC Deputy Director, which ends the process.    This grievance procedure must be used to resolve all "complaints" regarding "an action of an employee . . . that personally affects the inmate" except for nine specifically designated "non-grievable" matters which are: (1) parole, (2) release, (3) transfer, (4) job assignments, (5) disciplinaries, (6) anticipated events, (7) matters beyond the control of the ADC, (8) rejection of a publication, and (9) matters raised on behalf of another inmate.    (*Id.* at § III(H)) (emphasis added.)    Importantly, rejection of correspondence is not listed as a "non-grievable" matter.

### D.    Publication Policy AD 22-22

The ADC's publication policy is found in Administrative Directive 2022-22 ("AD 22-22"), which defines a "publication" as a "book, magazine, catalog, advertising brochure, religious tract, newspaper, periodical, newsletter, or any type of image or text (does not include a personal letter)." (Doc. 69-3 at § II(D) (parenthetical phrase in the original) (emphasis added).    And AD 22-22 says publications must be sent by "recognized commercial, religious, or charitable outlets;" not individuals.    (*Id.* at § I.)

A publication can be rejected for a variety of specifically listed reasons, but unlike the correspondence policy, there is no page limit.    (*Id.* at § III(B)).    The Mailroom Supervisor and Unit Publication Review Committee review incoming publications to determine if they contain

---

[4] Defendants say at "all relevant times to this lawsuit, Administrative Directive 19-20 and 19-34 was the ADC's Inmate Grievance Policy."    (Doc. 48 at 3; *see also* Doc. 46-1 at ¶ 4.)    But those are two separate Directives.    (Doc. 46-2; Doc. 46-3.)    The first page of AD 19-34 says it became "effective" and "superseded" AD 19-20 on December 2, 2019.    (Doc. 46-3 at 1.)    Because it is undisputed the events in the case occurred in 2023, AD 19-34 is the relevant grievance policy.

prohibited content or violate the size limitations. (*Id.* at § III(A)) (Doc. 69-1 at ¶ 11.) If so, the publication is sent to the Warden, who must approve or reject it within thirty days. (*Id.* at § III(C), (E).) If the Warden rejects the publication, a Notice of Rejection of Publication Form is sent to the prisoner stating the reason for the rejection. (*Id.* at § III(E), (F), (G), (H).) And the Form explains the prisoner can either: (1) appeal the rejection to the Central Office Publication Review Committee within ten days; (2) pay to have the publication returned to the sender or a third party within fifteen days; or (3) allow the publication to be destroyed. (*Id.*) Importantly, AD 22-22 also says rejection of a publication is "not grievable" under the general grievance procedure found in AD 19-34. (*Id.* at § III(F).)

E.    **Undisputed Facts**

On July 24, 2023, Plaintiff received a six-page, typed document from Word of Life Christian Fellowship, Inc., which is a "Non-Denominational, Non-Profit, Jail & Prison Ministry." (Doc. 46-9 at 1.) The document is not addressed to or signed by an individual, which would suggest it could be classified as correspondence. Instead, it appears to be a religious tract or newsletter discussing various provisions of the Bible. (*Id.*) Thus, it is likely this document is a publication, rather than correspondence, as defined by ADC policies.

On July 24, 2023, Defendant Southern, who is the EARU Mailroom Supervisor, sent Plaintiff a Return of Mail Notice pursuant to correspondence policy EARU 16.01.0 saying the religious document was rejected because it contained more than three pages. (Doc. 46-6 at ¶ 8, 11; Doc. 46-10). On July 26, 2023, Plaintiff filed grievance EAM-23-1300 challenging the rejection as a violation of his First Amendment rights. (Doc. 46-5 at 1.) The parties agree it is the only grievance Plaintiff filed about the matter. (Doc. 46-1; Doc. 46-4; Doc. 72.) During the investigation, Defendant Southern completed an Inmate Grievance Investigation Worksheet

explaining she rejected the religious document upon receipt because it contained too many pages and that it was being sent to the Unit Publication Review Committee for consideration.   (Doc. 46-5 at 4.)   On August 18, 2023, Defendant Warden Jackson denied the grievance because:

> Ms. Southern, mailroom supervisor, stated your <u>publication</u> had too many pages. According to AD 21-01, Inmate Correspondence, general <u>correspondence</u> is limited to 3 sheets of paper.   Documentation supports her statement.   Documentation also shows your <u>publication</u> was rejected by the Unit Publication Review Committee.   According to AD 19-34, Inmate Grievance Procedure, rejection of [a] <u>publication</u> is considered non-grievable.   Therefore, your grievance is without merit.

(Doc. 46-5) (emphasis added.)   This response does not take a clear position as to whether the rejected document is correspondence or a publication.   Neither do the parties.   But, as will be discussed, there is no need for the Court to resolve that issue because Plaintiff did not fully exhaust his administrative remedies in either instance.

i.    **Incomplete Exhaustion Under AD 19-34**

If the religious document Plaintiff received on July 24, 2023 was "correspondence" under AD 21-01 and EARU 16.01.0, then the three-page limit applied, and the proper procedure for challenging the rejection was AD 19-34.   In that case, the Warden's determination that it was a "non-grievable" matter under AD 19-34 was erroneous.   However, Plaintiff was required to appeal that wrongful determination to the ADC Deputy Director.   (Doc. 72 at ¶ 11, 22, 29). Plaintiff says he did so.   (*Id.* at ¶ 37-39.)   But the document he refers to is the Inmate Grievance Investigation Worksheet completed by Defendant Southern on August 10, 2023, which was before the Warden denied grievance EAM-23-1300 on August 18, 2023.   (Doc. 46-5 at 4-5.)   The Grievance Supervisor says in her sworn Declaration that Plaintiff did not appeal EAM-23-1300 to the ADC Deputy Director, which is consistent with the ADC records.   (Doc. 46-1 at ¶ 40; Doc. 46-4.)   And Plaintiff has not presented any contrary evidence. *See Conseco Life Ins. Co. v.*

*Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact").    Because Plaintiff did not complete all three steps of AD 19-34, EAM-23-1300 is not fully exhausted.[5]    *See Woodford*, 548 U.S. at 90 (administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"); *Porter v. Sturm*, 781 F.3d 448, 451-52 (8th Cir. 2015) ("[d]ismissal without prejudice is mandatory" when a prisoners does not complete the final stage of grievance process).

Grievance EAM-23-1300 is also flawed because Plaintiff did not specially name Warden Jackson as he was required to do by AD 19-34 § IV(E)(2).    (Doc. 46-3 at 6.)    The fact that Warden Jackson read the grievance was not enough.    *See Champion v. Akins*, Case No. 12-2467, 2013 WL 656797 (8th Cir. Feb. 24, 2013) (unpublished opinion).    Instead, to properly exhaust a corrective inaction claim against Warden Jackson under AD 19-34, Plaintiff was required to specifically name him in a grievance, raise that claim, and complete all three steps.    *Id.*    It is clear he did not do so.

Finally, Plaintiff does not say appealing to the ADC Deputy Director was an available avenue for him to seek relief.    Instead, Plaintiff admits he was "very familiar with" AD 19-34 and that a "true and accurate copy of the policy is kept in my possession." (Doc. 72 at ¶ 5.)    For

---

[5]    Additionally, although Defendants do not mention it, exhaustion must be completed at the time the lawsuit is filed, and not when the complaint is later amended. *See Johnson,* 340 F.3d at 627; *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005); *Tyler v. Kelley*, No. 5:17-cv-00239-JLH-JTK, 2018 WL 1528784, at *3 (E.D. Ark. Mar. 2, 2018); *Kelley v. Davis,* No. 2:22-cv-0034-DPM-ERE, 2022 WL 18359331, at n. 8 (E.D. Ark. Aug. 18, 2022).    Plaintiff filed this lawsuit on August 4, 2023.    (Doc. 2.)    Thus, any exhaustion efforts he took after August 4, 2023, cannot be considered in this lawsuit.    *See* Fed. R. Civ. P. 56(f) (a court may grant a motion for summary judgment "on grounds not raised by a party" after "giving notice and a reasonable time to respond").

these reasons, I conclude Plaintiff did not properly exhaust any claims against Defendants in EAM-23-1300.

### ii.     Incomplete Exhaustion Under AD 22-22

In contrast, if the religious document was a "publication" as defined by AD 22-22, the three-page limit did not apply.   And the grievance procedure in AD 19-34 was not the proper mechanism to challenge the rejection of that publication.   Instead, Plaintiff was required to appeal the Unit Publication Review Committee's decision to the Central Office Publication Review Committee ("Central Office.").   Defendants have not provided a copy of the Unit Publication Review Committee's Notice of Rejection of Publication Form or explained why that Committee rejected his religious document.   However, the Executive Assistant to the Director of the ADC explains in her sworn Declaration that it is her responsibility to prepare all publications for review before the Central Office.   (Doc. 69-1 at ¶ 28-32.)   And according to her records, Plaintiff did not send an appeal to the Central Office regarding the rejection of the religious document he received on July 24, 2024.   Plaintiff has not offered any contrary evidence.   *See Conseco Life Ins. Co.,* 620 F.3d at 909.   And he has not argued administrative remedies under AD 22-22 were unavailable to him.    To the contrary, as pointed out by Defendants, it is clear Plaintiff understood the procedure explained in AD 22-22 because in August 2023, he successfully appealed the rejection of an unrelated publication to the Central Office.    (*Id.*)   For these reasons, I conclude Plaintiff did not properly exhaust his administrative remedies under AD 22-22.

### F.   Plaintiff's Additional Arguments

Plaintiff says his RLUIPA claim should not be dismissed because the PLRA's exhaustion requirement does not apply to that statute.   (Doc. 68.)   But that is incorrect.   *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this

title, <u>or any other Federal law</u>, by a prisoner . . . until such administrative remedies as are available are exhausted") (emphasis added); *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (requiring exhaustion under the PLRA before raising a RLUIPA claim); *Woodford*, 548 U.S. at 85 ("exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983").

Plaintiff also asks the Court to decide his claims on the merits, instead of dismissing them due to his failure to follow the exhaustion policies.    (Doc. 68.)    However, there "is no question that exhaustion is mandatory under the PLRA."    *Jones*, 549 U.S. at 211.    And the Court cannot address the merits of any unexhausted claims.    *Id*; *see also Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378 (8th Cir. Aug. 19, 2010); *Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010).

That being said, Defendants' contradictory manner of treating the July 24, 2023 document as both a publication and correspondence was confusing.    And I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the Eighth Circuit has explained the critical role the exhaustion requirement plays in the remedy process as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27.    By failing to appeal under AD 19-34 or AD 22-22, Plaintiff deprived prison officials of the opportunity to make a final decision on whether his document was

correspondence or a publication.    If he had done so under either Directive and then Defendants tried to argue they were entitled to dismissal because he picked the wrong one, this might have been a closer case.    But it is undisputed Plaintiff did not take either route to completion. Because he did not do so, dismissal is mandatory.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion (Doc. 46) and Supplemental Motion (Doc. 69) for Summary Judgment be GRANTED, Plaintiff's claims against Defendants Jackson and Southern be DISMISSED without prejudice, and this case be CLOSED.

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 12th day of April 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

11